**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JEAN MARIE COMPARETTO,**

                              **Plaintiff,**

              **v.**                                    **3:11-CV-1514**
                                                        **(MAD/ESH)**

**CAROLYN W. COLVIN, Acting Commissioner**
**of Social Security,**

                              **Defendant.**
_____
_____

**APPEARANCES:**                          **OF COUNSEL:**

BINDER, BINDER LAW FIRM                 Eddy Pierre Pierre, Esq.
60 East 42nd Street
Suite 520
New York, New York 10165
*Attorney for Plaintiff*

Social Security Administration           Elizabeth D. Rothstein, Esq.
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, NY 10278
*Attorney for Defendant*

**MAE A. D'AGOSTINO, U. S. DISTRICT JUDGE**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

        Plaintiff Jean Marie Comparetto brings the above-captioned action pursuant to 42 U.S.C.

§ 405(g) of the Social Security Act, seeking a review of the Commissioner of Social Security's

decision to her application for Disability Insurance Benefits ("DIB").  This matter was referred to

United States Magistrate Judge Earl S. Hines for a Report and Recommendation pursuant to 28

U.S.C. §636(b)(1)(B) and Local Rule 72.3(d).   Magistrate Judge Hines recommended that this

Court remand the matter for further administrative proceedings pursuant to § 405(g). (Dkt. No.

11).  Presently before the Court is defendant's objection to the Report and Recommendation (Dkt.

No. 12).

## PROCEDURAL BACKGROUND

In August 2007, plaintiff protectively filed an application for DIB benefits.

(Administrative Transcript at p.94, 175-184).[1]  Plaintiff was 49 years old at the time of the

application with prior work experience as a waitress and a factory worker.  (T. 177).  Plaintiff

claimed that she was disabled due to herniated discs and arthritis. (T. 209). On December 5, 2007,

plaintiff's application was denied.  After remand from the Appeals Council, plaintiff appeared for

a second hearing before an ALJ on April 15, 2010.   On June 18, 2010, the ALJ issued a decision

denying plaintiff's claim for benefits.  (T. 19-30).  The Appeals Council denied plaintiff's request

for review, making the ALJ's decision the final determination of the Commissioner.  This action

followed.

## DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to

individuals with "disabilities."  The Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not less than

12 months."  42 U.S.C. § 423(d)(1)(A).  There is a five-step analysis for evaluating disability

claims:

> "In essence, if the Commissioner determines (1) that the claimant is
> not working, (2) that he has a 'severe impairment,' (3) that the
> impairment is not one [listed in Appendix 1 of the regulations] that

---

[1]  "(T. )" refers to pages of the administrative transcript. (Dkt. No. 6).

conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

The ALJ found at step one that plaintiff had not engaged in substantial gainful activity since August 30, 2006. (T. 22). At step two, the ALJ concluded that plaintiff suffered from a lumbar spine impairment which qualified as a "severe impairment" within the meaning of the Social Security Regulations (the "Regulations"). (T. 22). At the third step of the analysis, the ALJ determined that plaintiff's impairment did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. (T. 23). The ALJ found that plaintiff had the residual functional capacity ("RFC") to, "to lift and/or carry 20 pounds occasionally and ten pounds frequently, sit for six hours in an eight hour day, and stand and/or walk for six hours in an eight hour day. The claimant retains the ability to (on a sustained basis) understand, carry out and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting. This is consistent with the ability to

3

perform the full range of light work as defined in 20 CFR 404.1567(b)". (T. 25).  At step four, the

ALJ concluded that plaintiff was not capable of performing any past relevant work.  (T. 29).

Relying upon the Medical-Vocational grids, the ALJ found that there are jobs in significant

numbers in the national economy that the plaintiff can perform. (T. 29).  Therefore, the ALJ

concluded that plaintiff was not under a disability as defined by the Social Security Act.  (T. 30).

 In seeking federal judicial review of the Commissioner's decision, plaintiff argues that:

(1) the ALJ improperly determined that plaintiff's neck impairments and mental impairments

were not severe at step two of the sequential evaluation; (2)  the ALJ failed to follow the treating

physician rule; (3) the ALJ's RFC assessment is not supported by substantial evidence; and (4)

the ALJ erred when he relied solely upon the medical-vocational grids. (Dkt. No. 8).

## I. Report and Recommendation

 In the Report and Recommendation, Magistrate Judge Hines concluded that the

Commissioner's decision should be reversed and remanded.  The Magistrate Judge found that the

ALJ erred when he failed to incorporate plaintiff's cervical impairments into the RFC because

"the wealth of evidence in the record [ ] details such an impairment".   With respect to plaintiff's

RFC, the Magistrate Judge found that the ALJ's RFC analysis was not supported by substantial

evidence.  Specifically, the Magistrate Judge concluded that the ALJ did not comply with the

treating physician rule as he failed to provide good reasons for failing to give controlling weight

to plaintiff's treating physicians' opinions.  Moreover, the Magistrate Judge found that the ALJ

also "ferrets out obscure pieces of hearsay in an attempt to discredit [plaintiff] and her alleged

limitations" and that he improperly afforded controlling weight to the opinion of the non-

examining, state agency consultant, S. Putcha.   Based upon these errors, the Magistrate Judge

concluded that the ALJ's reliance upon the Grids at step five of the sequential analysis was

unsupported by substantial evidence. (Dkt. No. 11).  The Magistrate Judge recommended remand for the following: (a) re-evaluation of the medical source opinions regarding Comparetto's functional abilities and/or an independent medical examination to determine the same; (b) reassessment of Comparetto's residual functional capacity in accordance with her functional abilities;( c) description of the extent to which Comparetto's occupational base is eroded by nonexertional impairments, if any; and (d) if desirable, or necessary, testimony of either a vocational expert of other similar evidence regarding the existence of jobs in the national economy.

## II.      Standard of Review

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether plaintiff is disabled.  Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and  whether the decision is supported by substantial evidence.  *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court engages in a *de novo* review of any part of a Magistrate's Report and Recommendation to which a party specifically objects.  Failure to object timely to any portion of a Magistrate's Report and Recommendation operates as a waiver of further judicial review of those matters.  *See Roland v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)

Defendant presents specific objections to only portions of the Report and

Recommendation and asserts that the ALJ gave proper weight to the opinion of the State Agency

medical consultant.  Defendant also objects to the Magistrate Judge's recommendation that an

independent medical examination be held.  To the extent that defendant failed to file specific

objections to the Report–Recommendation, the Court reviews those portions of the

Report–Recommendation for clear error or manifest injustice.  *See Brown v. Peters*, 1997 WL

599355, at *2–3 (N.D.N.Y.) *aff'd without op.*, 175 F.3d 1007 (2d Cir.1999).

## III.     Severity of Cervical Impairments at Step 2

A "severe" impairment is one that significantly limits an individual's physical or mental

ability to do basic work activities.  *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010)

(citing 20 C.F.R. §§ 404.1520( c ), 416.920( c )). The Regulations define "basic work activities"

as the "abilities and aptitudes necessary to do most jobs," examples of which include,

> (1) Physical functions such as walking, standing, lifting, pushing,
> pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual
> work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b); see also Social Security Ruling 85–28, 1985 WL 56856, at *3–4, Titles

II and XVI: Medical Impairments That Are Not Severe (S.S.A.1985).

Plaintiff has the burden at step two in the sequential evaluation process to demonstrate the

severity of her impairment. *See* 20 C.F.R. § 404.1520( c ). The severity analysis at step two may

do no more than screen out *de minimis* claims.  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d

Cir.1995). The "mere presence of a disease or impairment, or establishing that a person has been

diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition

severe. *McConnell v. Astrue*, 2008 WL 833968, at *2 (N.D.N.Y.2008) (citing *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y.1995)). "Often when there are multiple impairments, and the ALJ finds that only some of the impairments, but not others, are severe, any error in the severity analysis is harmless because the ALJ continues with the sequential analysis, and does not deny plaintiff's application based on the second step alone." *Kemp v. Comm. of Soc. Sec.*, 2011 WL 3876526, at *8 (N.D.N.Y. 2011).

Here, the ALJ concluded that plaintiff's neck pain was not severe under the Regulations. (T. 23).   The ALJ also addressed the objective medical evidence including an MRI of plaintiff's cervical spine, taken on September 19, 2006, that revealed narrowing and disc herniations at C5/6 and C6/7 and spinal stenosis. The ALJ discussed plaintiff's cervical pain and noted that treatment records from Dr. Jubelt indicated that plaintiff's cervical spondylosis was "not a significant problem". (T. 23, 335).  The ALJ also discussed plaintiff's orthopedic evaluation with Dr. Justine Magurno.  On October 25, 2007, Dr. Magurno examined plaintiff at the request of the agency. (T. 349).  Plaintiff complained of constant neck pain that is worsened by holding an infant, walking, bending and raising her arms.  Plaintiff also complained of lumbar pain radiating to her legs. Plaintiff denied depression and stated she was able to do some cleaning and laundry with restrictions and could care for her own personal needs.  Upon examination, the doctor found that plaintiff was in no acute distress, gait was right-antalgic and she had difficulty with heel-toe walking.  Plaintiff's range of motion was restricted in her cervical spine and lumbar spine however, the range of motion in plaintiff's hips, knees, ankles, elbows, forearms and wrists was full.  Strength in her upper extremities and left lower extremity was 5/5 with 4/5 in the right quadricep.  No muscle atrophy, reflexes equal with no inflammation or instability.  Dr. Magurno

diagnosed plaintiff with chronic neck pain, cervical disc disease, cervical radiculopathy, chronic low back pain with radiculopathy and restless leg syndrome.

As noted by the ALJ and discussed further *infra*, the physical examinations related to plaintiff's neck, performed by plaintiff's treating physicians and the consultative examiner, were largely normal. Even considering the results of plaintiff's cervical MRI, the ALJ's omission of this impairment does not constitute reversible error. The ALJ's omission amounts to no more than "harmless error" because the ALJ continued with the sequential analysis. In the remaining steps, the ALJ discussed all of plaintiff's medical treatment and considered plaintiff's neck impairment in determining plaintiff's RFC. Indeed, the ALJ concluded, "plaintiff can lift/carry twenty pounds occasionally and ten pounds frequently". *See O'Grady v. Comm. of Soc. Sec.*, 2011 WL 3652432, at *4 (N.D.N.Y. 2011) (the Secretary continued with the analysis and considered the claimant's cervical condition in plaintiff's RFC). As the ALJ proceeded with the analysis and included plaintiff's severe and non-severe impairments in the RFC determination, there is no basis to remand this matter based upon the ALJ's step two analysis.

## IV.    ALJ's Assessment of Plaintiff's Depression at Step Two[2]

The Regulations require the ALJ to utilize a "special technique" at each step of the administrative review process when a claimant suffers from a mental impairment. *Rosado v. Barnhart*, 290 F.Supp.2d 431, 437 (S.D.N.Y. 2003) (citations omitted); 20 C.F.R. §§ 404.1520a(a); 416.920a(a). First, the ALJ must evaluate the claimant's symptoms, as well as other signs and laboratory findings, and determine whether the claimant has a "medically determinable mental impairment." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); *see also Dudelson v. Barnhart*, 2005 WL 2249771, at *12 (S.D.N.Y. 2005). If a medically determinable

---

[2] The Magistrate Judge did not discuss plaintiff's depression and made no finding with respect to whether the ALJ erred in his analysis of plaintiff's mental impairment.

impairment exists, the ALJ must "rate the degree of functional limitation resulting from the impairment [ ]." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   This process requires the ALJ to examine all relevant clinical and laboratory findings, as well as the effects of the symptoms on the claimant, the impact of medication and its side effects, and other evidence relevant to the impairment and its treatment. 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1).   The ALJ must rate the degree of the claimant's functional limitation in four specific areas, referred to as "Paragraph B" criteria: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).   The ALJ rates the first three areas on a five-point scale of "none," "mild," "moderate," "marked," and "extreme," and the fourth area on a four-point scale of "none," "one or two," "three," and "four or more." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).   If the first three areas are rated as "none" or "mild," and the fourth as "none," the ALJ will conclude that the mental impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Here, the ALJ discussed the "technique" and then applied the appropriate Regulations. Plaintiff did not object to that analysis or the conclusions.   Rather, plaintiff asserts that, "while probably not disabling on its own right, her depression exceeds the de minimis threshold".   The Court disagrees.   A diagnosis of depression, without more, does not suggest that a plaintiff's depression severely impairs her performance of any major life activity.  *See Torres v. Astrue*, 550 F.Supp.2d 404, 411 (W.D.N.Y. 2008).   The medical evidence must show that depression precludes a plaintiff from performing basic mental work activities.  *See Snyder v. Astrue*, 2009 WL 2157139, at *4 (W.D.N.Y. 2009).   Moreover, evidence that medication provides relief from

the severity of a mental condition can provide substantial evidence to support a finding that a plaintiff is not disabled. *Pennay*, 2008 WL 4069114, at *5.

Based upon a review of the record, the Court finds that substantial evidence supports the ALJ's decision. Plaintiff failed to mention depression as a disabling condition in her application for benefits. In August 2006, plaintiff advised Dr. Jubelt, during her initial visit, that she has "problems with mild depression, but he says this is manageable". (T. 346). In October 2007, during plaintiff's orthopedic examination by the state agency examining physician, plaintiff denied depression. (T. 349). In her brief in support of this issue, plaintiff relies upon her reports of subjective complaints to counselors and other providers at the VA hospital who are not acceptable medical sources. For example, plaintiff complained of depression during a visit with Ms. Miller in April 2008, however, Ms. Miller did not diagnose plaintiff with depression. In fact, none of plaintiff's treating physicians diagnosed plaintiff with depression.

Based upon the record, the Court finds that there is substantial evidence to support the ALJ's decision that plaintiff's depression was a non-severe impairment that did not prevent her from engaging in substantial gainful activity.

## V.      Treating Physicians

Plaintiff argues that the ALJ failed to follow the treating physician rule with respect to Burk Jubelt, M.D.and James Wheeling, M.D. Moreover, plaintiff claims that the ALJ erred when he failed to recontact Nurse Practitioner Susan Cleveland and Dr. Schoenfeldt.

The Second Circuit has defined a treating physician as one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Coty v. Sullivan*, 793 F.Supp. 83, 85–86 (S.D.N.Y.1992) (quoting *Schisler v. Bowen*, 851 F.2d 43 (2d Cir.1988)). Under the Regulations,

a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78–79; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993).   When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2). The Regulations also specify that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004) (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schaal v. Apfel*, 134 F.3d 501, 503–504 (2d Cir.1998).

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts.  *See Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)).  "While the final responsibility for deciding issues relating to disability is reserved for the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence.  *See Martin v. Astrue*, 337 F. App'x 87, 89 (2d Cir. 2009).

### A.    Dr. Burk Jubelt

11

On August 31, 2006, plaintiff sought treatment from Dr. Burk Jubelt for weakness in her legs.  Plaintiff was referred by Dr. James Wheeling as plaintiff questioned whether she suffered from multiple sclerosis.  (T. 346).  Plaintiff complained of tingling in her hands.  Dr. Jubelt's general and neurological examination was normal.  Plaintiff's motor strength was 5/5, her gait was steady and she was able to complete a heel/toe walk.  Dr. Jubelt noted that plaintiff's coordination was decreased.  Dr. Jubelt diagnosed plaintiff with limb pain, noted that she was hyperflexic and prescribed an MRI of her brain and cervical spine.   On September 27, 2006, plaintiff had a follow up visit with Dr. Jubelt complaining of aches in her arms and legs. (T. 342).  Plaintiff's examination was largely normal and her brain MRI and blood tests were normal.  Dr. Jubelt diagnosed plaintiff with cervical spondylosis and restless leg syndrome and prescribed Requip.

On October 30, 2006, plaintiff had a follow up visit with Dr. Jubelt with same the complaints.  Dr. Jubelt diagnosed plaintiff with cervical disc disease and increased her dosage of Requip.  Dr. Jubelt prescribed Viocodin, Flexeril and physical therapy.  On January 3, 2007, plaintiff returned with the same complaints and was prescribed the same treatment.  On July 18, 2007, plaintiff returned complaining of neck, back and leg pain and reported that physical therapy did not help her pain.  Dr. Jubelt noted that plaintiff had an MRI of her lumbar spine which revealed a herniation.  Dr. Jubelt advised plaintiff that this was a chronic problem that she would need to learn to manage without the overuse of narcotics.  On November 29, 2007, plaintiff returned to Dr. Jubelt and advised that she had been drinking too much due to domestic issues and that she was involved in a motor vehicle accident and suffered a fractured ankle.  Dr. Jubelt referred plaintiff to the pain management clinic.

On August 14, 2008, Dr. Jubelt examined plaintiff for low back pain and leg pain.  Dr. Jubelt noted that plaintiff was alert and oriented and her neurological functioning was generally normal. (T. 373).  Plaintiff's bulk and tone were normal and strength was 5/5 bilaterally.  Dr. Jubelt noted that pain inhibited plaintiff's effort and she experienced some numbness in her left leg.  Straight leg raising was restricted with pain and plaintiff demonstrated tenderness over her sciatic notches.  Dr. Jubelt diagnosed plaintiff with lumbar spondylosis with desiccation at varying levels, radicular pain and a history of cervical spondylosis that "is not a significant problem at the present time". (T. 374).  Dr. Jubelt encouraged plaintiff to exercise and continue with the pain clinic.  Dr. Jubelt opined that plaintiff was "disabled from doing any physical type of work where she is on her feet for long periods of time or is required to [sic] her carrying heavy objects weighing more than 5 pounds".

The ALJ discussed Dr. Jubelt's treatment and opinion and concluded:

> Dr. Jubelt's opinion regarding the extent of the claimant's limitations is given little weight in determining her residual functional capacity because it is not supported by his relatively mild clinical findings upon examination of the claimant.  Moreover, the claimant's daily activities and documented drug-seeking behavior, also undermine the accuracy of Dr. Jubelt's opinion. (T. 28).

The ALJ also stated that Dr. Jubelt "repeatedly noted in treatment records that the claimant had normal bulk and muscle tone, and no strength deficits in her upper or lower extremities", (T. 28) and, according to Dr. Jubelt's records, "claimant's gait was normal and that she was able to tandem walk without any difficulty".

Based upon the record, the Court finds that the ALJ assigned the proper weight to Dr. Jubelt's opinions and adequately explained his reasoning.  Dr. Jubelt's opinions regarding plaintiff's capabilities does not coincide with his office records or course of treatment. Moreover, prior to issuing his August 2008 opinion, Dr. Jubelt had not seen plaintiff in nearly eight months.

13

While Dr. Jubelt opined that plaintiff could not lift more than five pounds, he did not express any such limitations or opinions during his course of treatment. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004) (when a treating physician's opinions are inconsistent with even his own treatment notes, an ALJ may properly discount those opinions). Dr. Jubelt's own objective testing further belies his conclusions as he consistently found that plaintiff exhibited normal strength testing. *See Wynn v. Astrue*, 617 F.Supp.2d 177, 184 (W.D.N.Y.2009) (the significant limitations were not supported by objective assessments such as range of motion and strength tests).

In addition, the opinions expressed by Dr. Jubelt are belied by plaintiff's own testimony and daily activities. During the course of her treatment with Dr. Jubelt, plaintiff was able to care for her own personal needs, her grandchild and pets. Plaintiff was able to split, carry and stack wood, volunteer within the community, garden, cook and ride motorcycles/ATVs. (T. 200-203; 218-227; 321; 378-409).

Accordingly, the Court finds that the ALJ did not err in refusing to assign significant weight to Dr. Jubelt's opinion and thus, there is no basis to remand on this issue.

### B.    Dr. James Wheeling

On January 14, 2008, plaintiff treated with Dr. James Wheeling, a cardiologist affiliated with Cardiology Associates of Oneonta. (T. 377). Plaintiff was "followed for her cervical and lumbar disk disease and spondylosis". Plaintiff complained that she was unsteady, had difficulty driving and that her legs trembled at night. Upon examination, the doctor found her cranial nerves intact, no nodes or masses present, stiff posture and legs, sensation and pulses intact. Plaintiff was told to avoid straining and continue with her "present medication" which included Lyrica and Requip. On April 15, 2008, plaintiff returned to Dr. Wheeling claiming that her back pain and leg weakness had worsened. Dr. Wheeling noted that muscle strength was intact and

14

that her "DTRS were hyperactive". Dr. Wheeling noted that plaintiff should not do heaving

lifting as she was clearly unable to bend or reach or carry a significant load.

On May 12, 2008, plaintiff returned and Dr. Wheeling noted that she was hospitalized due

to an episode of unresponsiveness thought to be due to an excess of the combination of her

medications. Dr. Wheeling noted that she was "tremulous" but he did not see any change in her

physical examination and urged her to stretch and control her medications carefully. Dr.

Wheeling saw the plaintiff again a week later to ensure that she was controlling her medication.

Plaintiff complained of severe back pain and numbness. Dr. Wheeling's diagnosis was

unchanged. According to the record, plaintiff's last visit with Dr. Wheeling was July 7, 2008.

Plaintiff complained of the same pain which she described as "variable". Plaintiff's physical

examination was largely normal and she was advised to avoid weight gain and minimize her

medications.

On August 15, 2008, Dr. Wheeling executed a written opinion stating that plaintiff

suffered from multiple medical problems including degenerative joint disorder with probable

spinal stenosis and a progressive neuromuscular problem causing disabling back and lower

extremity pain and weakness. Dr. Wheeling stated that he agreed with Dr. Jubelt's opinion and

stated that plaintiff is unable to engage in prolonged sitting or standing without exacerbating pain

and therefore, she was "totally disabled from gainful employment".

The ALJ discussed Dr. Wheeling's treatment and opinions:

> Because Dr. Wheeling is a cardiologist, his opinions regarding the
> claimant's back impairment are of little evidentiary value. Moreover,
> his opinion is not supported by objective findings in his treatment
> notes. Therefore, this opinion is also given little evidentiary weight.
> (T. 28).

Plaintiff objects to this finding and claims that Dr. Wheeling is board certified in internal medicine.  Plaintiff claims that Dr. Wheeling noted many abnormal clinical findings which were consistent with other treating doctors.  However, the record does not support that assertion.  As with Dr. Jubelt's opinion, Dr. Wheeling's restrictive opinion regarding plaintiff's limitations is unsupported by his office notes and clinical findings.  Throughout his course of treatment, the doctor never opined that plaintiff suffered from such limitations.  Upon review of the record, the Court finds that the ALJ properly assigned little weight to Dr. Wheeling's opinions and adequately explained his reasoning.

### C.   Duty to Recontact

Plaintiff claims that the ALJ erred when he failed to recontact Nurse Practitioner Karen Cleveland to obtain clarification regarding her opinions.  Plaintiff also argues that the ALJ erroneously relied upon an "obscure piece of hearsay evidence" when he cited to the portion of Dr. Wheeling's records that refers to Dr. Schonfeldt's treatment.   Plaintiff alleges that since "the record does not contain a single record or report from Dr. Schonfeldt, the ALJ could not rely upon his findings.

Social Security Ruling 06–03p provides:

> In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:
>
> • Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists ...;
>
> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on

> special knowledge of the individual and may provide insight into the
> severity of the impairment(s) and how it affects the individual's ability
> to function.

SSR 06–03p, 2006 WL 2329939, at *2–3 (S.S.A. 2006).  An ALJ has an obligation to develop the

administrative record, including, in certain circumstances, recontacting a source of a claimant's

medical evidence to obtain additional information. *Lukose v. Astrue*, 2011 WL 5191784, at *3

(W.D.N.Y.2011) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.1998)). The ALJ will obtain

additional evidence if he/she is unable to make a determination of disability based on the current

record. 20 C.F.R. § 404.1527(c)(3).  This Circuit has consistently held that if the record does not

contain any Medical Source Statement or RFC Assessment from plaintiff's treating physician, the

ALJ has a duty to contact plaintiff's treating physician in an attempt to obtain an assessment. *See*

*Pitcher v. Barnhart*, 2009 WL 890671, at *14 (N.D.N.Y.2009).  The Regulations provide that,

"[t]he Commissioner should request an MSS from the claimant's treating physician if such a

statement has not been provided". *Outley v. Astrue*, 2010 WL 3703065, at *4 (N.D.N.Y.2010)

(citing 20 C.F.R. § 416.912(d) (explaining that the Commissioner will "make every reasonable

effort to help you get medical reports from your own medical sources, a medical report should

include an MSS").

The record contains a one-page report authored by Karen M. Cleveland, N.P. for Joseph

Catania, M.D. from the New York Spine & Wellness Center. (T. 543).  The report is dated

November 16, 2009 and addressed "To Whom It May Concern".  Nurse Cleveland states that

plaintiff is being treated for pain related to her lumbar herniated nucleus pulposus without

myelopathy, lumbar radiculopathy, low back pain, fibromyalgia, cervical spondylosis without

myelopathy, and cervical herniated nucleus pulposus without myelopathy.  Nurse Cleveland notes

that plaintiff has been treating with nerve blocks, neuropathic agents, and narcotics for pain

management and will require continued treatment.  Nurse Cleveland concluded, "[i]t is our feeling that she should not be returning to her position as a waitress because this type of work continues to aggravate her symptoms and exacerbate her pain".

With respect to Nurse Cleveland, the ALJ found:

> Ms. Cleveland, did not, however, indicate that claimant would be unable to perform other work.  Nor did she provide a function-by-function of the claimant's limitations.  Moreover, this is not a medical opinion under the Regulations.  Therefore, this opinion is also given little weight in determining the claimant's residual functional capacity. (T. 28)

.

Based upon the regulations, Nurse Cleveland is not a "treating source".  Accordingly, the ALJ was not compelled to recontact Nurse Cleveland.

With respect to Dr. Schonfeldt, the ALJ briefly mentioned his treatment.  The ALJ noted:

> The claimant was referred to Dr. Schonfeldt due to her complaints of numbness in her left thigh.  Dr. Schonfeldt noted that the claimant was very animated, active, bending, reaching, and not very impaired. (T. 27).

There is no evidence in the record regarding plaintiff's treatment with Dr. Schonfeldt including his speciality or the frequency of plaintiff's treatment.   Indeed, plaintiff admits that the record does not contain a single piece of evidence from Dr. Schonfeldt.  The ALJ referred to Dr. Schonfeldt's treatment as referenced in Dr. Wheeling's records.  (T. 376).  Thus, Dr. Schonfeldt cannot be defined as a "treating source" and the ALJ did not err by failing to contact Dr. Schonfeldt.   With respect to the ALJ's reliance upon the portion of Dr. Wheelings's records that refer to Dr. Schonfeldt, plaintiff has not cited to any caselaw that precludes the ALJ from relying upon  or recounting such evidence contained in treatment notes.  Indeed, 20 C.F.R. § 404.950(c) allows the ALJ to consider evidence at the hearing which may otherwise be inadmissible in the court because of evidentiary rules.  *Aden v. Barnhart,* 2003 WL 1090324, at *9 (S.D.N.Y. 2003);

*see also Murphy v. Sec'y of Health and Human Servs.,* 62 F.Supp.2d 1104, 1108 (S.D.N.Y. 1999) (the plaintiff had ample opportunity to rebut the hearsay evidence offered by the Secretary, both at the administrative hearing and at the subsequent administrative appeal).

Thus, the ALJ adequately developed the record with respect to the acceptable medical sources and remand is not required on this issue.

## VI.     RFC

Residual functional capacity is:

> "what an individual can still do despite his or her limitations....
> Ordinarily, RFC is the individual's maximum remaining ability to do
> sustained work activities in an ordinary work setting on a regular and
> continuing basis, and the RFC assessment must include a discussion
> of the individual's abilities on that basis. A 'regular and continuing
> basis' means 8 hours a day, for 5 days a week, or an equivalent work
> schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96–8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)).  In making the RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). The ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e).

Here, the ALJ found that plaintiff has the RFC:

> to lift and/or carry 20 pounds occasionally and ten pounds frequently,
> sit for six hours in an eight hour day, and stand and/or walk for six
> hours in an eight hour day.  The claimant retains the ability to (on a
> sustained basis) understand, carry out, and remember simple
> instructions; respond appropriately to supervision, coworkers, and
> usual work situations; and deal with changes in a routine work setting.

This is consistent with the ability to perform the full range of light work as defined in 20 CFR 404.1567(b).

Plaintiff claims that the ALJ erred in formulating this RFC because the ALJ did not cite to any medical opinion from a treating or examining doctor, including the state agency physician, to support the assessment.  Plaintiff contends that the ALJ erroneously relied upon the opinion of the agency analyst, Dr. Putcha and further, that the ALJ failed to include Dr. Tallarico's opinions in the RFC assessment.

An ALJ may rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of Social Security disability." *Williams v. Astrue*, 2011 WL 831426, at *11 (N.D.N.Y.2011) (citing 20 C.F.R. §§ 404.1512(b)(6), 404.1513©, 404.1527(f)(2), 416.912(b)(6), 416.913, and 416.927(f)(2)).  If an ALJ relies upon a non-examining reviewer's opinion, that opinion must be supported by the bulk of the record. See Social Security Ruling ("SSR") 96–6p, 1996 WL374180, *2 (July 1996); *see also Rocchio v. Astrue*, 2010 WL 5563842, at *14 (S.D.N.Y. 2010).

In October 2007, Dr. Magurno completed a Medical Source Statement and opined that plaintiff had moderate limitation for walking, lifting and reaching overhead.  She also concluded that plaintiff had marked limitation in carrying and lifting due to neck and back pain.  In addition, Dr. Magurno stated that plaintiff would need accommodations to change positions to alleviate pain.  On December 4, 2007, S. Putcha prepared a Physical Residual Functional Capacity Assessment.  Putcha reviewed plaintiff's medical records including an MRI of plaintiff's lumbar spine taken at Southern Tier Imaging in February 2007. (T. 355).  Putcha opined that plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently.  Putcha also concluded that plaintiff could stand and/or walk and sit for six hours in an 8 hour workday and that she had no restrictions in pushing or pulling. (T. 359).

20

The ALJ discussed Dr. Magurno's examination/opinion and concluded, "Dr. Magurno's assessment is internally inconsistent in that she at one point says that the claimant has only a moderate limitation for lifting and then later says that the claimant has a marked limitation to lifting". The ALJ assigned only partial weight to her opinion. The ALJ also discussed Putcha's opinion:

> The State Agency medical consultant and disability analyst both concluded that the claimant retained the capacity to perform light work (Exhibits 6F and 7F).[3] Objections to the disability analyst's assessment have been duly noted. However, this opinion is well supported by the objective medical evidence and the claimant's broad range of activities of daily living and is consistent with the opinion of the medical consultant and consultative examiner, Dr. Magurno. Therefore, although not a medical source opinion, it is given some weight in determining the claimant's physical residual functional capacity.

The Court has reviewed the medical record, in it's entirety. Plaintiff's treating physicians consistently noted that plaintiff exhibited no muscle atrophy, muscle strength was intact, full range of motion was displayed in extremities and plaintiff walked with a normal gait. Dr. Jubelt's neurological examinations were normal. In addition, plaintiff treated at the Veterans' Administration Medical Center in Binghamton from April 2008 until December 2009 and was continually diagnosed with "chronic back pain" while exhibiting no objective abnormalities. Plaintiff's pain was treated with medication including hydrocodone. Dr. Jubelt opined that plaintiff suffered from a chronic problem that "she is going to have to learn to live with".

The Court finds that it was proper for the ALJ to rely upon Putcha's report and opinions, because though he was a non-examining consultant, his opinion provided support for RFC

---

[3] While the ALJ seeming refers to the analyst and consult as two different individuals, 6F and 7F were executed

determination because it is consistent with substantial evidence in the record.  *See Laframboise v. Comm'r of Soc. Sec.*,  2013 WL 1019326, at *11 (N.D.N.Y. 2013).

With respect to Dr. Tallarico, the ALJ noted:

> Eric Tallarico, MD, completed a form for the claimant on February 1, 2010, in which he indicates that the claimant was only able to lift/carry five pounds frequently and ten pounds occasionally, sit for 4 or 5 hours in an eight hour day, and stand and/or walk for one hour in an eight hour day.  Notably, as of the date he completed this form, Dr. Tallarico had only examined the claimant one time and for the limited purpose of giving her nerve block injections on October 19, 2009.  This assessment is not supported by the objective medical evidence which includes only minor clinical findings upon physical examination.

Accordingly, the ALJ assigned only little weight to his opinion. (T. 28).   The Court finds no error in this assessment.   Dr. Tallarico's opinion of plaintiff's limitations was based upon a single examination. Dr. Tallarico did not provide plaintiff with the type of ongoing medical treatment that would define him as a "treating physician". *See George v. Bowen*, 692 F.Supp. 215, 219 (S.D.N.Y. 1988) (holding that the nature of the physician's relationship with the plaintiff did not rise to the level of a treating physician as the physician had only seen the plaintiff on two occasions); *see also Quinones v. Barnhart*, 2006 WL 2136245, at *7 (S.D.N.Y.2006) (holding that the treating physician's opinion was correctly afforded less weight as he only saw the plaintiff on one occasion).

Based upon the aforementioned, the Court concludes that substantial evidence supports the ALJ's RFC assessment.

## VII.   Vocational Expert and the Medical-Vocational Guidelines

Plaintiff argues that the ALJ erred in failing to elicit vocational expert testimony in this case, and instead relying exclusively on the Medical-Vocational Guidelines, or "grids".

Under the Social Security Act, the Commissioner bears the burden of proof for the final determination of disability. *Pratt v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996). Generally speaking, if a claimant suffers only from exertional impairments, then the Commissioner may satisfy his burden by resorting to the applicable grids.[4] *Id.* at 39. The grids "take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience". *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Ordinarily, the ALJ need not consult a vocational expert, and may satisfy this burden "by resorting to the applicable medical vocational guidelines (the grids)". *Id.* at 78 (citing 20 C.F.R. Pt. 404, Subpt. P, App.2).

The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids.[5] *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986). The testimony of a vocational expert that jobs exist in the economy which claimant can obtain and perform is required only when "a claimant's nonexertional impairments significantly diminish his ability to work-over and above any incapacity caused solely from exertional limitations-so that he is unable to perform the full range of employment indicated by the medical vocational guidelines." *Id.* at 605-06. The use of the phrase "significantly diminish" means the "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity". *Id.* at 606. Rather, exclusive reliance on the Grids

---

[4] An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling). 20 C.F.R. §§ 404.1569a(b), 416.969a(b); *see also Rodriguez v. Apfel*, 1998 WL 150981, at *10, n. 12 (S.D.N.Y. 1998).

[5] A "nonexertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c). Examples of nonexertional limitations are nervousness, inability to concentrate, difficulties with sight or vision, and an inability to tolerate dust or fumes. 20 C.F.R. §§ 404.1569a(a), (c)(i), (ii), (iv), (v), 416.969a(a), (c)(i), (ii), (iv), (v); *see also Rodriguez*, 1998 WL 150981, at *10, n. 12.

will be deemed inappropriate only where the non-exertional impairments " significantly limit the range of work permitted by his exertional limitations." *Id.* at 605-06 (emphasis added). "A claimant's work capacity is 'significantly diminished' if there is an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.' " *Bapp,* 802 F.2d at 606.

Under these circumstances, to satisfy his burden at step five, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Rosa*, 168 F.3d at 78 (quoting *Bapp,* 802 F.2d at 604).   Therefore, when considering nonexertional impairments, the ALJ must first consider the question - whether the range of work the plaintiff could perform was so significantly diminished as to require the introduction of vocational testimony.  *Samuels v. Barnhart*, 2003 WL 21108321, at *12 (S.D.N.Y. 2003) (holding that the regulations require an ALJ to consider the combined effect of a plaintiff's mental and physical limitations on his work capacity before using the grids).

In this case, the ALJ concluded that based upon plaintiff's RFC for the full range of light work, a finding of "not disabled" was directed by Rule 202.20 and 202.13 without the need for vocational testimony. (T. 30).  There is no evidence that plaintiff's non-exertional impairments resulted in limitations on plaintiff's ability to do light work.   Plaintiff claims that she suffers from numerous non-exertional limitations and relies upon the opinions of Dr. Jubelt and Dr. Wheeling. However, as discussed above, the ALJ appropriately assigned limited weight to those opinions. Plaintiff does not cite to any portion of the record or any treatment note that indicates that plaintiff's non-exertional impairments significantly impacted her ability to perform work-related functions.  As stated above, the RFC analysis is supported by substantial evidence.   Therefore,

the ALJ was permitted to rely on the Grids at the fifth step of the sequential evaluation to assess that there were a significant number of jobs in the light work category in both the national and local economy that plaintiff could perform. *See* SSR 83-10; SSR 85-15; *see also* Bapp, 802 F.2d at 605.[6]

## CONCLUSION

**It is hereby**

**ORDERED** that the Report-Recommendation (Dkt. No. 11) is hereby rejected; it is further

**ORDERED**, that the decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED** that plaintiff's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk is directed to close the case and enter judgment accordingly; it is further;

**ORDERED** that the Clerk of the Court shall serve a copy of this Order upon all parties and the Magistrate Judge assigned to this case.

**IT IS SO ORDERED.**

Dated:  March 22, 2013
　　　　Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[6] As the Court has found that the ALJ's decision should be affirmed, the Court need not address defendant's contentions regarding an additional independent medical examination.

25